IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DUSTY LAMBERT,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION DENYING MOTION FOR COMPASSIONATE RELEASE<br><br>Case No. 2:15-cr-00454-TC<br><br>Judge Tena Campbell |

Prisoner Dusty Lambert moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asking the court to reduce his 13-year prison sentence to time served. Def.'s Mot. at 1 (ECF No. 37). To date, he has served a little over 5.5 years of his sentence. He bases his motion on fear that that he is particularly vulnerable to the COVID-19 virus and faces an unacceptable risk of serious physical harm or death should he become infected with the disease.

This court agrees with both parties that Mr. Lambert has satisfied his burden of showing extraordinary and compelling reasons to release him. But the court finds that the balance of sentencing factors set forth in 18 U.S.C. § 3553(a) does not warrant his release. Accordingly, his motion is denied.

### FRAMEWORK FOR COMPASSIONATE RELEASE ANALYSIS

Mr. Lambert brings his motion under 18 U.S.C. § 3582, as amended by the First Step

1

Act[1] (often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range.

Before Congress passed the First Step Act, only the Bureau of Prisons (BOP) could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the defendant has fully exhausted all administrative rights" with the BOP. Id. § 3582(c)(1)(A). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Id.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" Id. That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act,

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

when Congress mandated that the USSC, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons</u> for sentence reduction, including the criteria to be applied <u>and a list of specific examples</u>…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued that policy statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B).

In the Commentary Application Notes, the USSC defines extraordinary and compelling reasons in terms of the defendant's (A) medical condition,[2] (B) advanced age,[3] (C) family circumstances,[4] or (D) other reasons. USSG 1B1.13 Commentary Application Notes 1(A)-(D). The "other reasons" catch-all provision simply says, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

---

[2] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG 1B1.13 Commentary Application Note 1(A)(i)-(ii).
[3] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  USSG 1B1.13 Commentary Application Note 1(B).
[4] "Family Circumstances" consist of "(i) the death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).

3

USSG 1B1.13 Commentary Application Note 1(D).

The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. This court has held, in a non-COVID-19 case, that the Policy Statement does not curtail its discretion to determine what circumstances are extraordinary and compelling under § 3582. In United States v. Maumau, this court

> join[ed] the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.

No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020). In this and other districts, courts have reached the same conclusion when addressing motions raising COVID-19-related reasons for release.

> Since the onset of the COVID-19 pandemic, many courts "have agreed that [extraordinary and compelling] reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID- 19 while in custody." United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020) (unpublished). Of the courts that have reached such a conclusion, several "have based their finding on the Sentencing Commission's catch-all provision for 'other' extraordinary and compelling reasons" in the Application Notes. Id. Conversely, other courts have reached this determination based on "a plain reading of § 3582(c)(1)(A) after concluding that the [relevant] policy statement no longer applies." Id. Either way, "a majority of federal district courts have found . . . that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (unpublished).

4

United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (unpublished).

As evidenced below, the only possible outlet for Mr. Lambert under the Policy Statement is the "other reasons" category, which does not provide any measurable criteria. Consequently, regardless of whether the court follows the Policy Statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

## ANALYSIS

Mr. Lambert has the burden to establish that he is entitled to a sentence reduction under § 3582. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Bell, No. 1:16-CR-53-TC, 2020 WL 7344170, at *3 (D. Utah Dec. 14, 2020). The statute requires Mr. Lambert to satisfy the threshold requirement that he exhaust his administrative remedies with the BOP. If he does, he must convince the court that "extraordinary and compelling reasons warrant [the requested] reduction." 18 U.S.C. § 3582(c)(1)(A)(i). If he makes that showing, the court weighs the seven factors set forth in 18 U.S.C. § 3553(a), "to the extent that they are applicable," to determine whether to grant release.

For the reasons set forth below, the court finds that Mr. Lambert has established extraordinary and compelling reasons for his early release, but the court's balancing of the § 3553(a) factors weighs in favor of his continued incarceration.

1. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Mr. Lambert is currently incarcerated at FCI La Tuna in El Paso, Texas. On August 18, 2020, Mr. Lambert submitted a request for compassionate release to the warden of FCI La Tuna. The warden denied his request on August 25, 2020. Def.'s Mot. Ex. A (ECF No. 37-1). Mr.

Lambert appealed, and BOP denied his appeal on October 1, 2020. Pl.'s Opp'n Ex. 3 (ECF No. 45-3). Mr. Lambert has satisfied § 3582(c)(1)(A)'s administrative exhaustion requirement.

**2. EXTRAORDINARY AND COMPELLING REASONS**

In Mr. Lambert's motion, he asserts that he "is particularly vulnerable to COVID-19" and "faces a very high likelihood of death or permanent bodily injury" should he become infected. Def.'s Mot. at 1. He points out that FCI La Tuna had ten inmates and staff who were positive for COVID-19 as of October 20, 2020, and that living and working conditions do not allow the prisoners to follow safety measures necessary to avoid infection.

To begin, the court finds that the existence of the pandemic is not by itself an extraordinary and compelling reason for release, and that the existence of infections in the facility where the defendant is incarcerated, without more, is also not a sufficient reason. But if the defendant is at risk for severe complications that could lead to serious injury or death if he contracts the virus, that may be an extraordinary and compelling reason under § 3582(c)(1)(A)(i). The United States reaches the same conclusion: "If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the standard of 'extraordinary and compelling reasons.'" Pl.'s Opp'n at 4 (footnote citation omitted).

According to the CDC, older adults and people with certain underlying medical conditions who contract COVID-19 are at increased risk for severe illness, or even death. CDC, COVID-19, People At Increased Risk (Jan. 4, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html. The older the person, the greater the risk. CDC, COVID-19, Older Adults (Dec. 13, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

A person of any age has an increased risk of severe illness if he has one or more of following CDC-identified chronic conditions: cancer; chronic kidney disease; chronic obstructive pulmonary disease; Down syndrome, heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; immunocompromised state from a solid organ transplant; obesity (body mass index of 30 kg/m2 or higher but < 40 kg/m2); severe obesity (body mass index ≥ 40 kg/m2); pregnancy; sickle cell disease; smoking; and type 2 diabetes mellitus. CDC, COVID-19, People With Certain Medical Conditions (Dec. 29, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html. Finally, the CDC has determined that the following chronic conditions might put a person at higher risk:  moderate-to-severe asthma; cerebrovascular disease; cystic fibrosis; hypertension or high blood pressure; immunocompromised state; neurologic conditions, such as dementia; liver disease; overweight (body mass index > 25 kg/m2, but < 30 kg/m2); pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. Id.

Here, Mr. Lambert says that his medical conditions cause "trouble . . . on their own" and place him at risk of severe illness from COVID-19. Def.'s Mot. at 4. Mr. Lambert is 46 years old and suffers from hypertension, obesity, and high cholesterol. Def.'s Mot. Ex. B, Sealed Medical Records. He is at high risk of heart disease.

If COVID-19 did not exist, Mr. Lambert's medical conditions would not warrant his release. But his obesity and hypertension do put him at risk of severe illness or death should he contract the novel coronavirus. See CDC, COVID-19, People With Certain Medical Conditions (Dec. 29, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html. This court has found in other cases that if the defendant's underlying medical condition puts him at risk for severe illness or death if he contracts the virus, that is an

7

extraordinary and compelling reason under § 3582(c)(1)(A)(i). See, e.g. United States v. Vazquez, No. 2:06-cr-196-TC, 2020 WL 7247069, at *5–6 (D. Utah Dec. 9, 2020) (unpublished); United States. v. Chee, 2:05-cr-773-TC, 2020 WL 5258696, at *4 (D. Utah Sept. 3, 2020) (unpublished).

The court agrees with both parties that Mr. Lambert has shown extraordinary and compelling reasons for a sentence reduction.

### 3.  BALANCING OF § 3553(a) FACTORS

Though Mr. Lambert has shown extraordinary and compelling reasons, the court finds that a balancing of the factors in § 3553(a) does not justify a reduction in sentence. The § 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established … in the guidelines …;

(5) any pertinent policy statement … issued by the Sentencing Commission …;

    (6) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).[5]

    The first factor—Mr. Lambert's criminal history, characteristics, and the nature of his offense—weighs against his early release. Mr. Lambert was taken into custody in 2015 on outstanding warrants for unrelated charges. Law enforcement officers found a loaded handgun under the driver's seat in Mr. Lambert's vehicle as well as 254 grams of methamphetamine and 60 syringes. See Presentence R. ¶ 6 (ECF No. 30). On December 15, 2015, Mr. Lambert pled guilty to one count of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A).

    Before his present conviction, Mr. Lambert possessed and sold methamphetamine despite several convictions and periods of incarceration. In 2000, he was convicted of methamphetamine use and possession with intent to distribute. While on parole in 2002, he pled guilty to another count of possession with intent to distribute. Between 2004 and 2015, he was convicted on

---

[5] The BOP Policy Statement directs the court to first apply the § 3553(a) factors and "then determine if the defendant remains a danger to the safety of any other person in the community as provided in 18 U.S.C. § 3142(g)." USSG 1B1.13(2). § 3142(g) provides balancing factors comparable to those provided in § 3553(a), including: "(1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, including—(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

several drug-related reckless driving charges and methamphetamine use. His criminal record includes a total of thirteen misdemeanors and felonies since 1994. Though Mr. Lambert's offense of conviction was non-violent, the court finds that the nature of the offense in combination with Mr. Lambert's criminal history does not warrant his release.

The second, third, and fourth factors also weigh against Mr. Lambert's early release. Mr. Lambert's intent to distribute 254 grams of methamphetamine is a serious offense that carries a 10-year mandatory minimum sentence. The low-end of the guideline imprisonment range for Mr. Lambert's offense is about 21 years. Presentence R. at ¶ 58. If Mr. Lambert were to be released before completing the 10-year mandatory minimum sentence, this would not reflect the gravity of his offense nor afford adequate deterrence to similar criminal conduct. Along the same lines, completion of at least 10 years of Mr. Lambert's prison sentence is needed to avoid sentence disparities among similar defendants, as § 3553(a)'s sixth factor describes.

Mr. Lambert's sentence is also necessary to ensure that he completes his drug addiction treatment. Mr. Lambert acknowledges that his past criminal activities were the result of his struggle with substance abuse and drug addiction. He explains that he has been drug-free and engaged in treatment during his incarceration. Def.'s Mot. at 4. But Mr. Lambert has not yet completed the BOP's Drub Abuse Program; he is still enrolled and participating in treatment. First Step Act Relief Eligibility R. at ¶ 15. Mr. Lambert needs to complete his drug abuse treatment to ensure he will not pose a danger to the public upon release. A sentence reduction would disrupt his treatment progress.

In sum, the relevant § 3553 factors do not warrant Mr. Lambert's early release.

**ORDER**

For the foregoing reasons, Dusty Lambert's Motion for Compassionate Release (ECF No. 37) is DENIED.

DATED this 2nd day of February, 2021.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge